In re METRO SQUARE, a Minnesota partnership, Debtor.

NORTHWESTERN NATIONAL LIFE INSURANCE CO., Plaintiff,

v.

METRO SQUARE, a Minnesota partnership, Defendant.

Bankruptcy No. 4–88–2117.
Adv. No. 4–88–163.

United States Bankruptcy Court,
D. Minnesota.

Dec. 13, 1988.

John Thomas, Mary Senkus, Oppenheimer, Wolff & Donnelly, Minneapolis, Minn., for plaintiff.

Christopher Elliott, Gordon Gendler, Fabyanske, Svoboda & Westra, St. Paul, Minn., for defendant/debtor.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR SUMMARY JUDGMENT

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on the 15th day of September, 1988, on a motion by plaintiff ("NWNL") for summary judgment in its favor. Christopher Elliott and Gordon Gendler appeared on behalf of defendant, debtor; John Thomas and Mary Senkus appeared on behalf of plaintiff, NWNL. The court has jurisdiction to hear and decide this matter pursuant to 28 U.S.C. §§ 1334 and 157, and Local Rule 103(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K) and (M).

### FACTS

Before the court is a motion for summary judgment brought by NWNL seeking to have the court issue an injunction prohibiting debtor from using rents during the pendency of the debtor's bankruptcy case. NWNL asserts that it is the assignee of rents with a security interest perfected prior to the filing of the bankruptcy petition, and that the rents are its cash collateral which debtor has been using in violation of 11 U.S.C. § 363(c)(2) and (4). The facts are undisputed and the case is ripe for disposition by summary judgment.

Debtor is a Minnesota partnership formed in 1983 for the purpose of acquiring and operating Metro Square, an office and commercial building located in downtown St. Paul, Minnesota. The building is debtor's sole asset. Debtor acquired the building using $11,000,000.00 in funds advanced to it by NWNL. In connection with that advance, debtor delivered to NWNL its promissory note in the principal sum of $11,000,000.00; a mortgage and security agreement and fixture financing statement ("the mortgage"); and an assignment of rents ("the assignment"). All three documents bore date September 29, 1983. Each recited that it was to be interpreted in accordance with Minnesota law.

Debtor granted NWNL a mortgage and security interest in the building, as well as all present and future "rents, income, contract rights, leases and profits to be derived from the building." Article 3.1 of the mortgage provided that it was the "stated intention" that rents were to be regarded as part of the real property mortgaged. Article 7 of the mortgage provided that upon the occurrence of an event of default NWNL could commence foreclosure proceedings and apply for the appointment of a receiver under Minn.Stat. § 576.01. In the assignment, "for the purpose of securing" payment of the note and performance of the mortgage, debtor "granted, transferred and assigned" to NWNL "the immediate and continuing right to receive and collect rents, income, profits and issues...." The assignment specifically recited that it was absolute:

4. *Present Assignment.* This Assignment shall constitute a perfected, absolute and present assignment, provided the Assignor shall, at the sole discretion

of the Assignee, have the right to collect ... all of the Rents, and to retain, use and enjoy the same unless and until a default shall occur in the payment when due of interest or principal under the Note or hereunder, or under the Mortgage or under any other instrument now or hereafter securing the Note or the Indebtedness Secured Hereby.

Paragraph 5 further provided that in the event of default, NWNL could declare the entire indebtedness immediately due and payable, could "revoke the privilege granted Assignor hereunder to collect Rents", and could, at its option, take steps itself to enter, manage and control the property or, alternatively, could seek the appointment of a receiver under state law to collect the rents and manage the property. In the event of the appointment of a receiver or possession by NWNL, the assignment required the receiver or NWNL to collect the income from the building and to use it to pay the costs of the receiver, normal maintenance, taxes and insurance, and finally the indebtedness owed to NWNL.

The mortgage and assignment were, therefore, typical of those found in such transactions wherein the parties agree in one document to mortgage the rents as additional security for payment of the indebtedness and in a separate collateral document to assign the rents, purportedly, on an absolute basis. The assignment is also typical in that, while it contains language which purports to assign the rents *absolutely,* it also licenses back to the assignor the right to collect those rents until that right is revoked.

NWNL filed both the mortgage and the assignment with the Ramsey County Recorder and Ramsey County Registrar of Titles on October 3, 1983. It filed financing statements which referred specifically to the realty, as well as to the rents to be derived therefrom, in the office of the chattel division of the Ramsey County Recorder, and the Minnesota Secretary of State, on October 3 and October 5, 1983, respectively.

Debtor filed its petition for relief on May 25, 1988. At the time of filing, debtor was in default. It had not made a principal and interest payment which had come due on May 1, 1988. It had also failed to pay property taxes which came due on May 15, 1988. Although NWNL had advised debtor in writing that it intended to pursue remedies available to it as a result of such default, NWNL had not taken action to enforce its rights as a secured creditor. It had not commenced foreclosure proceedings, had not applied to a court for the appointment of a receiver, had not filed any statement of default under Minn.Stat. § 559.17, subd. 2(3)(b), and had not taken possession of the property for the purpose of collecting the rents, nor had it revoked debtor's license to do so. This action for injunctive and declaratory relief was filed on June 2, 1988. NWNL has not consented to debtor's use of the rents and profits being generated by the building during the pendency of the case and debtor has made no motion for leave to use the rents.

In its complaint NWNL seeks an order declaring the rents to be cash collateral, requiring the debtor to refrain from using them, and further requiring the debtor to account for them. In its answer, debtor asserts that NWNL did not have a perfected security interest in the rents as of the date the petition was filed. Debtor has counterclaimed seeking a declaration that NWNL does not have a security interest in the rents and a declaration that debtor's rights in the rents are superior to those of NWNL pursuant to 11 U.S.C. § 544.

In its motion NWNL asserts that summary judgment is appropriate determining that the assignment and mortgage were duly perfected and constitute a first priority lien on all of debtor's rights to rents and income from the property. NWNL further seeks judgment to the effect that its lien on the rents is not subject to avoidance under 11 U.S.C. § 544 and a declaration that the rents are cash collateral within the meaning of 11 U.S.C. § 363. Debtor asserts that NWNL does not have a duly perfected security interest in the rents, but rather a mere inchoate right to collect them; that either under 11 U.S.C. § 544(a)(1) or (3), or under § 544(b), NWNL's lien can be avoid-

ed by the debtor in possession; and that the rents are not cash collateral, which NWNL, in equity, should be allowed to use during the pendency of the bankruptcy proceedings. It also asserts that under no circumstances can rents garnered from leases entered into postpetition be considered cash collateral.

In opposing summary judgment, debtor asserts that there are material issues of fact regarding the parties' intent when they entered into the note, mortgage, and assignment. In particular, debtor asserts that there are issues of fact relating to the construction of the assignment itself and its import, as well as equitable reasons why NWNL should not be allowed control of the rents as cash collateral.

## DISCUSSION

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure, incorporated by Rule 7056 of the Bankruptcy Rules, provides that summary judgment may be rendered only if:

> [t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Under Rule 56(c), summary judgment is appropriately granted only if, after reviewing the facts in the light most favorable to the party against whom judgment is sought, the court concludes that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). It is not sufficient for the party against whom the motion is made to urge that there are issues of fact. Such issues of fact must be material, in that they would affect the outcome of the suit under governing law. That is, the factual issues raised must have some relevance to the legal elements of the claim. To defeat a motion for summary judgment, an adverse party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed. 2d 202 (1986). However, if the court finds it appropriate it may enter summary judgment in favor of the party moved against. Fed.R.Civ.P. 56(b); Bankruptcy Rule 7056.

### B. There Are No Material Issues of Fact

Debtor asserts there is a factual issue relating to the intent of the parties at the time the mortgage and the assignment were given. Debtor has filed affidavits of O. Walter Johnson and John Arkell in which they aver that they believed NWNL would need to appoint a receiver before it was entitled to collect the rents. The principals also assert that NWNL waived any rights it had to collect the rents by allowing the debtor to make delayed payments and to fail to deposit taxes in an escrow account.

There is no issue of material fact regarding interpretation of the documents. The affidavits provide irrelevant information because the documents themselves are clear. Furthermore, parol evidence is not admissible to alter the terms and conditions of clear agreements. See RJM Sales & Marketing, Inc. v. Banfi Prods. Corp., 546 F.Supp. 1368, 1374 (D.Minn.1982); Baker v. Citizens State Bank of St. Louis Park, 349 N.W.2d 552, 558 (Minn.1984).

There is also no factual issue relating to waiver. Waiver is the voluntary relinquishment of a known right. See Engstrom v. Farmers & Bankers Life Ins. Co., 230 Minn. 308, 311–12, 41 N.W.2d 422, 424 (1950); Anda Constr. Co. v. First Fed. Savs. & Loan, 349 N.W.2d 275, 278 (Minn. Ct.App.1985), pet. for rev. denied (Minn. Sept. 5, 1984). Allowing late payments and no escrow deposits does not waive such rights.

Rather, the court will resolve this motion as a matter of law.

### C. NWNL Did Not Have a Perfected Security Interest in the Rents by Reason of the Assignment Prior to the Filing of the Petition in Bankruptcy

Section 552(b) of the Bankruptcy Code expressly recognizes the claim of a mort-

gagee or an assignee holding an assignment of rents and profits generated after the filing of the petition. That section provides:

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, *rents,* or profits of such property, then such security interest extends to such proceeds, product, offspring, *rents,* or profits acquired by the estate after the commencement of the case *to the extent provided by such security agreement and by applicable nonbankruptcy law,* except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b) (emphasis added).

Since the mortgage and the assignment clearly and unambiguously evince an intent to grant NWNL a security interest in the rents securing the property, this court is left to decide whether NWNL had a perfected security interest in the rents as of the date the petition was filed. If so, the rents are cash collateral under 11 U.S.C. § 363. Any determination of the validity of an assignment of rents provision in the context of a bankruptcy case is to be resolved by reference to state law. *Butner v. United States,* 440 U.S. 48, 57, 99 S.Ct. 914, 919, 59 L.Ed.2d 136 (1979); *Saline State Bank v. Mahloch,* 834 F.2d 690, 692 (8th Cir.1987).

In this case the applicable state law is Minn.Stat. § 559.17, which provides in pertinent part:

Subd. 2. A mortgagor may assign, as additional security for the debt secured by the mortgage, the rents and profits from the mortgaged real property, if the mortgage:

(1) Was executed, modified or amended subsequent to August 1, 1977;

(2) Secured an original principal amount of $500,000 or more; and

(3) Is not a lien upon property which was entirely homesteaded as agricultural property. The assignment may be enforced as follows:

(a) If, by the terms of an assignment, a receiver is to be appointed upon the occurrence of some specified event, and a showing is made that the event has occurred, the court shall, without regard to waste, adequacy of the security, or solvency of the mortgagor, appoint a receiver who shall, with respect to the excess cash remaining after application as provided in section 576.01, subdivision 2, apply it as prescribed by the assignment. If the assignment so provides, the receiver shall apply the excess cash in the manner set out herein from the date of appointment through the entire redemption period from any foreclosure sale. Subject to the terms of the assignment, the receiver shall have the powers and duties as set forth in section 576.01, subdivision 2.

(b) If no provision is made for the appointment of a receiver in the assignment, the assignment shall be binding upon the assignor without regard to waste, adequacy of the security or solvency of the mortgagor, but only in the event of default in the terms and conditions of the mortgage, and only in the event the assignment requires the holder thereof to first apply the rents and profits received as provided in section 576.01, subdivision 2, in which case the same shall operate against and be binding upon the occupiers of the premises from the date of filing by the holder of the assignment in the office of the county recorder or the office of the registrar of titles for the country in which the property is located of a notice of default in the terms and conditions of the mortgage and service of a copy of the notice upon the occupiers of the premises. The holder of the assignment shall apply the rents and profits received in accordance with the terms of the as-

signment, and, if the assignment so provides, for the entire redemption period from any foreclosure sale. A holder of an assignment who enforces it in accordance with this clause shall not be deemed to be a mortgagee in possession with attendant liability.

Nothing contained herein shall prohibit the right to reinstate the mortgage debt granted pursuant to section 580.30, nor the right to redeem granted pursuant to sections 580.23 and 581.10, and any excess cash, as that term is used herein, collected by the receiver under clause (a), or any rents' and profits taken by the holder of the assignment under clause (b), shall be credited to the amount required to be paid to effect a reinstatement or redemption.

*Id.*

Currently Minnesota recognizes rents are distinct from the realty and may be separately assigned. An assignment of rents under Minn.Stat. § 559.17 results in a security interest in future rents, evidenced by the assigning document. *See In re Pavilion Place Assocs.*, 89 B.R. 36, 39 (Bktcy. D.Minn.1988); *G.G.C. Co. v. First Nat'l Bank of St. Paul*, 287 N.W.2d 378, 382 (Minn.1979). Minnesota law also recognizes that the strict requirements which must be satisfied to obtain the appointment of a receiver need not be complied with in order to enforce an assignment of rents clause in a mortgage. *G.G.C. Co.*, 287 N.W.2d at 383. A close reading of the holding in *G.G.C. Co.* reveals that the court still contemplated some type of affirmative action to enforce the assignment of rents, such as the establishment of an escrow arrangement with periodic accountings to the court. *Id.*

Assignments of rents relating to real estate mortgages generally take one of two forms: (1) absolute assignments and (2) collateral assignments. An absolute assignment does not normally recite that it is given as security with the result that a

simple default perfects the assignment. On the other hand, a collateral assignment is expressly given as security for the performance of the mortgagor's obligations under the mortgage, and typically provides that upon default the mortgagee (or the assignee) may take possession of the building and collect the rents. *See Collier Real Estate Transactions and the Bankruptcy Code,* ¶ 2.03[1] (L. Cherkis rev. ed. 1988). *See generally* Note, *Interests in Collaterally Assigned Rents and Profits Under the Bankruptcy Code,* 22 Hou.L.Rev. 1251 (1985); Note, *Assignment of Rents Clauses Under California Law and in Bankruptcy: Strategy for the Secured Creditor,* 31 Hast.L.J. 1433 (1980); Comment, *The Mortgagee's Right to Rents and Profits Following a Petition in Bankruptcy,* 60 Iowa L.Rev. 1388 (1975).

█ The assignment in this case was clearly not an absolute assignment because there was not an absolute conveyance; rather it was for collateral; the rents were given as additional security for payment of the mortgage. As a result, default alone did not perfect NWNL's interest in the rents; something more needed to be done to preserve NWNL's inchoate right to revoke the license to collect the rents which it had provided to debtor in the assignment.

█ Filing was not, as NWNL asserts, perfection of the assignment. NWNL asserts that under Minnesota law it had a fully perfected first priority security interest in the rents as of the date of filing. As a consequence, it asserts, the rents are cash collateral within the meaning of 11 U.S.C. § 363. NWNL points to the fact that both the mortgage and the assignment were filed with the county recorder, and urges that under Minn.Stat. § 507.34 it had a duly perfected secured interest. Section 507.34 provides that the filing of a conveyance in the office of a county recorder provides notice to all third parties.[1]

█ Minnesota is a lien theory state and the filing of a mortgage of any type makes

---

**1.** NWNL also asserts that the filing of its financing statement perfected the security interest. This is incorrect. Minn.Stat. § 336.9–104(j)

(1988). *See First Fed. Savs. v. City Nat'l Bank,* 87 B.R. 565, 568 (W.D.Ark.1988).

the interest good against subsequent lien claimants. But, as a result of the filing, all the mortgagee gets is a lien on the property, not the right to immediate possession (whether it be realty or rents). In order to obtain immediate possession, in equity, it has always been true that the mortgagee on realty had to foreclose. It is for this reason that the cases are legion which hold that unless the assignee of rents has also taken some affirmative step beyond recording the assignment as of the date of the bankruptcy, the most the mortgagee or assignee has is the inchoate right to the rents and not the right to possession.[2] *See, e.g., Saline State Bank v. Mahlock,* 834 F.2d 690, 692–93 (8th Cir.1987); *Casbeer v. State Federal Savs. & Loan Ass'n of Gibbon (In re Casbeer ),* 793 F.2d 1436, 1442 (5th Cir.1986); *Wolters Village, Ltd. v. Village Props., Ltd. (In re Village Props., Ltd.),* 723 F.2d 441, 446 (5th Cir.), *cert. denied,* 446 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984) (the form of the action taken to perfect is not as important as its substantive thrust-diligent action by the mortgagee which demonstrates that he would probably have obtained the rents had the bankruptcy not intervened); *In re T.M. Carlton House Partners, Ltd.,* 91 B.R. 349, 353–54 (Bktcy.E.D.Pa.1985); *In re Association Center Limited Partnership,* 87 B.R. 142, 145 (Bktcy.N.D.Wash.

1988) (perfected security interest through recordation amounts to only an inchoate lien as to rents); *In re Prichard Plaza Assocs. Ltd. Partnership,* 84 B.R. 289, 295 (Bktcy.D.Mass.1988); *In re Rief,* 83 B.R. 626, 628 (Bktcy.S.D.Iowa 1988); *Ziegler v. First Nat'l Bank of Volga (In re Ziegler ),* 65 B.R. 285, 286–87 (Bktcy.D.S.D.1986); *United States v. Farrell (In re Fluge ),* 57 B.R. 451, 454 (Bktcy.D.N.D.1985) (under North Dakota law some form of affirmative action is required to fully establish the interest in rents); *Exchange Nat'l Bank v. Gotta (In re Gotta ),* 47 B.R. 198, 203 (Bktcy.D.Wis.1985).

The steps that need to be taken prior to bankruptcy depend, in each case, on a very careful and precise reading of what the state law provides with respect to such assignments. Each case turns on a particularized reading of the state statute relating to the enforcement of the assignment.

Formerly, in Minnesota and elsewhere, it was absolutely forbidden to subvert the equity of redemption by entering into a separate rent assignment; the courts would simply not recognize them. The inequities of this soon became apparent, since mortgagors tended to sit on the property and milk it for its rents during the period of redemption. In Minnesota and elsewhere, statutes have been passed which specifically recognize the validity

---

**2.** As one commentator stated:

[i]t follows from *Butner v. United States,* 440 U.S. 48 [99 S.Ct. 914, 59 L.Ed.2d 136] (1979), that, in those states in which affirmative action is required by a secured party to enforce the assignment of rents clause, the rents are not cash collateral until that action is taken. This is because the requirement of Section 363(a) that 'an entity other than the estate' have an interest therein has not been satisfied. As one court has pointed out:

An examination of the legislative history reveals that Congress did not intend for the Code to preempt state law determinations of a mortgagee's interest in rents. This conclusion comports with 'the principle of bankruptcy jurisprudence ... that federal law supercedes state law only to the extent necessary to further federal objectives'.... The policy considerations and federalism concerns that underpin the *Butner* decision are just as applicable to the new code as they were to the 1898 Act. As the Supreme Court has noted: 'Uniform treatment of property interests by both

state and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy.' *Wolters Village, Ltd. v. Village Properties, Ltd. (In re Village Properties, Ltd.),* 723 F.2d 441, 446 (5th Cir.), *cert. denied,* 466 U.S. 974 [104 S.Ct. 2350, 80 L.Ed.2d 823] (1984).

When the secured creditor has undertaken affirmative action to protect its right to post-bankruptcy rents, or where it is found that under state law the assignment of rents clause is self-executing, the courts have tended to limit the use to which the rents might be put. For the most part, the debtor in possession or trustee is permitted to use the rents for purposes of maintaining the property, for making real estate tax payments and, if there is a surplus, to make mortgage amortization payments. These holdings comport with the requirement of adequate protection.

R. Broude, *Reorganizations Under Chapter 11 of The Bankruptcy Code,* § 5.01[3], at 11–12 (1986).

and enforceability of assignment of rent provisions. *See, e.g.,* Minn.Stat. § 559.17. Those statutes differ in language, but the purpose is the same, to allow the mortgagee or assignee to obtain possession and use of the rents during the period of redemption, to prevent the "milking" of the mortgaged property, and to apply any excess after costs of maintenance and repairs, etc., to payment of a deficiency, if any.

In Minnesota a mortgagee in large commercial transactions may now take an assignment of the rents as additional security, and it is clear from that language that a mortgagee may now obtain possession of the rents without commencing foreclosure proceedings. To obtain such possession or *"enforce"* its assignment, it has to do one of two things: either, obtain a court to appoint a receiver (if the assignment, by its terms, requires the appointment of a receiver), or take over possession itself after first filing a notice of default with the appropriate office. *See* Minn.Stat. § 559.17, subd. 2. Neither move may be taken until an event of default has occurred. In both cases, the receiver, or the assignee in possession, must first use the rents for operations and upkeep. NWNL did not take any of these steps prior to the filing of the bankruptcy petition and thus the most it had was an inchoate right to the rents which could not be further perfected once the petition had been filed by reason of the automatic stay.

This conclusion gives full force to § 559.17, without going beyond its meaning and intent. Had § 559.17 done what the Florida statute does (i.e., declare not only that the assignments are allowed, but also that they become absolute upon default) I would have come to a different conclusion. *See In re Aloma Square, Inc.,* 85 B.R. 623, 625–26 (Bktcy.M.D.Fla.1988). Had NWNL either obtained the appointment of a receiver or revoked the license it had granted to debtor to collect in the assignment, and itself taken possession of the property, the result would also have been different. *See In re Tripplet,* 84 B.R. 84, 88–89 (Bktcy.W. D.Tex.1988) (absent an agreement by the parties that the assignment would be absolute, ascertained by construing the instru-

ments, affirmative action must be taken). Having done none of that, it did not have a perfected enforceable assignment; rather, the only thing it had was an inchoate right to the rents.

Therefore, unless it is entitled to perfect that inchoate right postpetition, the rents are not cash collateral under 11 U.S.C. § 363.

At this point I recognize this portion of the decision disagrees with Judge O'Brien's decision in *In re Pavilion Place,* 89 B.R. 36 (Bktcy.D.Minn.1988). Perhaps the case could be distinguished on its facts. If not, I must respectfully disagree with it. Again, I would probably have come to a different conclusion had the legislature been more clear in expressing the effect of a default on the assignment. I have great difficulty, however, reading into the statute anything other than a recognition of a right to take an assignment of rents as additional security for a mortgage, as well as a specific instruction that enforcement of that assignment requires action which was not taken by NWNL prepetition. Rather than abolishing the need to take affirmative steps beyond filing to perfect, I read the statute as specifically mandating such actions. If the legislature had wanted to provide that a default automatically perfected a security interest in rents, making it absolute, it could have done so. In my view, it did not.

### D. NWNL Cannot Perfect Its Interest Postpetition

A related issue is whether 11 U.S.C. § 546(b) can be used to perfect an interest in rents postpetition. That section provides:

(b) The rights and powers of a trustee under sections 544, 545 and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and

such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

11 U.S.C. § 546(b). The question then is whether under Minnesota law a judgment lien creditor could cut off the rights of NWNL prior to NWNL's commencing action to enforce its lien. A majority of courts hold that a mortgagee can perfect its security interest in rents postpetition by filing a § 546(b) perfection notice. *See Casbeer v. State Federal Savs. & Loan,* 793 F.2d 1436, 1443 (5th Cir.1986); *Wolters Village, Ltd. v. Village Properties, Ltd. (In re Village Properties, Ltd.),* 723 F.2d 441, 446–47 (5th Cir.), *cert. denied,* 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984); *Consolidated Capital Income Trust v. Colter, Inc.,* 47 B.R. 1008, 1011 (D.Colo.1985); *Waldron v. Northwest Acceptance Corp. (In re Johnson ),* 62 B.R. 24, 27–28 (Bktcy. 9th Cir.1986); *In re Mears,* 88 B.R. 419, 421 (Bktcy.S.D.Fla. 1988); *In re Reif,* 83 B.R. 626, 629 (Bktcy. S.D.Iowa 1988); *In re Gelwicks,* 81 B.R. 445, 447–48 (Bktcy.N.D.Ill.1987). *See also Saline State Bank v. Mahloch,* 834 F.2d 690, 696 (8th Cir.1987). Those cases base their holding on an expansive reading of § 546(b). However, there is a growing minority of courts that have held an assignment of rents cannot be perfected under § 546(b). *See In re T.M. Carlton House Partners, Ltd.,* 91 B.R. 349, 354–56 (Bktcy.

E.D.Pa.1988); *In re Association Center Ltd. Partnership,* 87 B.R. 142, 146 (Bktcy. W.D.Wash.1988); *In re Prichard Plaza Assocs. Ltd. Partnership,* 84 B.R. 289, 300–01 (Bktcy.D.Mass.1988) (section 546(b) has no applicability to a transaction involving an assignment of rents); *Exchange Nat'l Bank v. Gotta,* 47 B.R. 198, 202 (Bktcy.W.D.Wis.1985). The minority view of cases correctly point out that those cases which have allowed § 546(b) perfection have misconstrued the purpose behind the statute.[3] The legislative history of § 546(b) states:

> The rights granted to a creditor under this subsection prevail over the trustee only if the transferee has perfected the transfer in accordance with applicable law, and that perfection relates back to a date that is before the commencement of the case.

S.Rep. No. 95–989, 95th Cong.2d Sess. 86, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5872. The minority view properly emphasizes that § 546(b) may not be used to perfect a security interest postpetition unless the state law being applied specifically authorizes retroactive perfection. While the wording of the Code may be somewhat broad, the legislative history seems to dictate a narrow reading. As such, § 546(b) should be read as a timing statute, and because the Minnesota Statute at issue has no such effect, NWNL may not perfect its inchoate lien on the rents simply by giving notice pursuant to § 546(b).

---

**3.** One court in particular pointed out the flaw in the analysis of the majority view:

> A few courts have divined from this language [in section 546(b) ] a relevance to the present question as the result of a misunderstanding of the concept of perfection. They regard the action which a particular state requires the mortgagee to take to acquire an interest in rents as an act of perfection under § 546(b). Thus a motion filed by the mortgagee in the bankruptcy court asking for an order requiring sequestration of rents has been considered an act of perfection under § 546(b).
>
>      *   *   *   *   *   *
>
> The issue here is the present nature of the Bank's interest in current rents. Section 546(b) is designed to affirm the validity of statutes such as § 9–301(2) of the U.C.C.,

which permits a purchase money security interest to be perfected within ten days after the debtor receives possession of the collateral. U.C.C. § 9–301(2) expresses a strong policy in favor of a secured party who provides the funds for a debtor to purchase the collateral. Mechanics liens are also favored interests that are given retroactive effect. If the particular statute has no retroactive effect, § 546(b) does not apply. Decisions such as the Fifth Circuit's decision in *Casbeer* and *Wolters Village* fail to limit the application of § 546(b) to those rare statutes which give retroactive priority effect to a secured party's filing (or other action) against an innocent third party who has previously acquired rights in the collateral.

*Prichard Plaza,* 84 B.R. at 300–01.

A recent Eighth Circuit decision, *Saline State Bank v. Mahloch*, 834 F.2d 690 (8th Cir.1987), which is distinguishable from the present case, dealt with the issue of postpetition perfection in a somewhat different context. The Eighth Circuit held that Nebraska law required some affirmative act to perfect an assignment of rents. *Saline*, 834 F.2d at 694. Since no such action had been taken by the secured party prior to filing, it was faced with the question of whether, under Nebraska law, a postpetition motion to sequester rents could perfect the interest. The Eighth Circuit allowed a postpetition sequestration of rents to be commenced in order to perfect an assignment in rents. The court did not rely specifically on § 546(b), but referred instead to §§ 552(b) and 362. *See Saline*, 834 F.2d at 695–96. Thus, *Saline* is clearly distinguishable on its facts. The court held that relief from stay was not necessary in order to award rents and profits to the creditor from the date after it filed its petition to sequester rents and profits, 834 F.2d at 696, and that the filing of a complaint was sufficient to enable the court to grant the request to sequester rents and profits. The case seemed most clearly to rest on the specific state statute involved, Nebraska, in a case where no proper party had asserted "strong arm" powers under 11 U.S.C. § 544. *Saline* distinguished those jurisdictions which require actual possession to perfect an interest in rents and profits based upon state law involved. *See* 834 F.2d at 696.

In any event, even if postpetition perfection were allowed, *Saline* clearly holds that such perfection must be accomplished in accordance with state law and the agreements of the parties. Under Minn.Stat. § 559.17, NWNL could only accomplish perfection by the appointment of a receiver, or possibly by itself giving notice of default and taking possession, which steps have not occurred.

### E.   Strong Arm Powers Under 11 U.S.C. § 544

■ Section 544 of the Bankruptcy Code confers upon the trustee the power to set aside or avoid transfers of or encumbrances on the debtor's property. It provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544. Under § 544 the trustee is accorded avoidance powers the same as if he were a bona fide purchaser of real property or judgment lien creditor. Whenever under applicable law such a creditor or bona fide purchaser might prevail over prior transfers, liens, encumbrances or the like, the trustee, or debtor in possession, will also prevail. 4 *Collier on Bankrupt-*

cy, ¶ 544.01, at 544–2 to 3 (L. King 15th ed. 1986). Thus § 544(a) allows a trustee in bankruptcy to avoid liens and security interests against the debtor's estate which were not properly perfected under state law before the debtor filed bankruptcy. *Pirsig Farms, Inc. v. John Deere Co. (In re Pirsig Farms, Inc.)*, 46 B.R. 237, 240 (D.Minn.1985). *See Frier v. Creative Bath Prods., Inc. (In re Measure Control Services, Inc.)*, 48 B.R. 613, 615 (Bktcy.E.D.N.Y.1985). As a debtor in possession, the debtor in this case has all the rights and powers of a trustee, subject to a few exceptions. 11 U.S.C. § 1107(a). Essentially, the trustee or debtor in possession takes priority over any unenforceable or unperfected security interests. *Pirsig Farms*, 46 B.R. at 242. Because this court has already determined that NWNL's interest in the assignment of rents is unperfected, the question then is whether the debtor in possession may avoid that interest under 11 U.S.C. § 544.

The general rule under Minnesota law is that the first lien in point of time takes precedence. *Oldewurtel v. Redding*, 421 N.W.2d 722, 726 (Minn.1988); *Schnirring v. Stubbe*, 177 Minn. 441, 443, 225 N.W. 389, 390 (1929). Furthermore, Minnesota law has long held that a lien is not a property interest but rather is collateral for a debt. *Application of Gau*, 230 Minn. 235, 240, 41 N.W.2d 444, 448 (1950). *See Redding*, 421 N.W.2d at 726. As the supreme court stated in *Gau*, "a lien is [in] no sense an estate or interest in the land." 230 Minn. at 240, 41 N.W.2d at 448. Accordingly, pursuant to § 544(a)(1) the debtor in possession acquired the status of a lien creditor, with respect to rental income, as of the commencement of the case. As such, applying the general rule of first in time, first in right, NWNL's inchoate lien is inferior to the debtor in possession's lien and is avoided by the debtor in possession by operation of § 544(a)(1).

### F. Conclusion

▮ The end result is that none of the rents are cash collateral. That result, however, does not mean the debtor obtains the rents unfettered by prior obligations. The debtor in possession has fiduciary and accounting responsibilities to all of its creditors. The only way to serve the best interests of all parties involved is that the debtor properly utilize the rents to pay for the operation and maintenance of the property, taxes, insurance and other costs of maintaining and operating commercial property. If the rents are being used for improper purposes or dissipated, it is the court who is the final arbiter over the use and disposition of the funds and assets of the estate and debtor in possession. *See Association Center*, 87 B.R. at 147.

THEREFORE, IT IS HEREBY ORDERED that:

1. There are no genuine issues of material fact and summary judgment is appropriate.

2. Defendant-debtor is entitled to summary judgment as a matter of law declaring:

a. NWNL did not have a perfected security interest in the rents as of the date of the filing of the petition;

b. NWNL did not have a right to perfect its security interest in the rents post-petition and it has not done so, in any event.

c. Debtor has rights prior to those of NWNL under the "strong arm" provisions of 11 U.S.C. § 544.

d. Debtor shall use the rents only for the purposes set forth in the assignment of rents provision and in the statute, and in accordance with its fiduciary duty to other creditors.

e. Debtor shall be required to regularly account to NWNL for the use that is being made of the rents and shall furnish NWNL on a monthly basis with a detailed report of rental income and expenditures.

f. Both parties shall have leave to timely bring before this court on an expedited basis any objections to expenditures being made or to be made by debtor for expenses NWNL contends are outside the scope of the statute and the assignment of rents clause.

LET JUDGMENT BE ENTERED ACCORDINGLY.