In re **CAMELOT ASSOCIATES LIMITED PARTNERSHIP, Floresta Associates Limited Partnership, Southbridge Associates · Limited Partnership, Debtors.**

**Bankruptcy Nos. 3–87–2131 to 3–87–2133.**

United States Bankruptcy Court, D. Minnesota, Third Division.

March 27, 1989.

Randall L. Seaver, Minneapolis, Minn., for debtors.

Raymond J. Ostler, Gomberg and Sharfman, Ltd., Chicago, Ill., Steven H. Berndt, Minneapolis, Minn., for Pathway Financial.

## ORDER DENYING MOTIONS OF PATHWAY FINANCIAL FOR ADEQUATE PROTECTION

GREGORY F. KISHEL, Bankruptcy Judge.

These Chapter 11 cases come on before the Court in chambers upon the motions of Pathway Financial ("Pathway") for adequate protection. Pathway originally presented this motion in conjunction with its motion for relief from stay. In a February 24, 1988 order, this Court deferred ruling on Pathway's motions for relief from stay pending final adjudication of Pathway's secured status in related litigation involving Pathway, the debtors in these cases, and other parties, presently venued in the United States District Court for this District. The Court later ordered briefing on the adequate protection issues joined by Pathway's motions, and took them under advisement after the final brief was filed in May, 1988. Pathway appears by its attorneys, Raymond J. Ostler and Steven H. Berndt. Debtors (individually "Camelot," "Floresta," and "Southbridge"; collectively "Debtors") appear by Randall L. Seaver. MetroBank Minneapolis ("MetroBank"), a scheduled creditor of Southbridge, appears by its attorney, Rosanne H. Wirth. Upon the moving and responsive documents, briefs, and other relevant pleadings and proceedings in these three cases, the Court makes the following Findings of Fact, Conclusions of Law and Order.

## FINDINGS OF FACT

Camelot, Floresta, and Southbridge are Minnesota limited partnerships which filed voluntary petitions for reorganization under Chapter 11 in this Court on July 16, 1987. Walter C. Kocemba and Steve R. Klaers are general partners in all of them. In 1983–84, Kocemba and Klaers formed the three debtors to acquire blocks of condominiums in three separate developments in Broward County, Florida. No debtor purchased all of the units in its respective development.

In connection with its purchase of each condominium unit,[1] each debtor executed a promissory note in favor of Capital Mortgage Financial Corporation ("Capital"), and granted Capital a mortgage against the unit to secure the debt evidenced by the note. Each debtor also executed an instrument titled "Collateral Assignment of Rental and Voting Rights" for each unit in favor of Capital. The parties to the Camelot transactions executed the notes, mortgages, and assignments of rents on January 1, 1984. The parties to the Floresta and Southbridge transactions executed them on April 1, 1984. In December 1984, Capital assigned its interests under the notes, mortgages, and assignments of rents to Pathway.

For each mortgage instrument, the parties used the Florida version of the "FNMA–FHLMC Uniform Instrument." For the Southbridge transactions, the parties used the "Single Family" version, which does not contain an assignment-of-rents clause. For the Camelot transactions, the parties used the "1 to 4 Family" version, which contains the following relevant language at paragraph 20:

20. **Assignment of Rents: Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall prior to acceleration [upon any default by Borrower] ... or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Under acceleration ... or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to

---

1. The specimen instruments submitted by the parties as exhibits indicate that the debtors purchased and mortgaged each unit as a separate transaction. The parties acknowledge that all instruments used for purchases in each development were identical, but for the legal descriptions.

collect the rents of the Property, including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including but not limited to receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

(The parties did not place specimen copies of the Floresta mortgages into the record, so it is unknown which version of the FNMA–FHLMC instrument they used in those transactions.)

The parties used an identical form for the "Collateral Assignment of Rentals and Voting Rights" executed in the transactions for all three debtors. That instrument provides, at p. 1:

> ... [I]n order to further secure the payment of the indebtedness of the Assignor to the Assignee, ... the Assignor does hereby sell, assign, transfer, and set over onto the Assignee all of the rents, issues, and profits of the aforesaid premises, this Assignment to become effective immediately but the Assignee hereby grants to the Assignor a license to collect said rents until a default shall occur under any of the terms and conditions of the aforesaid Note and Mortgage and upon the occurrance [sic] of any such default the license herein granted shall automatically terminate....

> .    .    .    .    .

> 1. The Assignor hereby authorizes the Assignee by its officers, employees, or agents, at its option, after the occurrance [sic] of a default ..., to enter upon the premises and to collect, in the name of the Assignor or in its own name as Assignee, the rents accrued but unpaid and in arrears at the date of such default as well as the rents thereafter accruing and becoming payable during the period

of the continuance of the default or any other default ...

At some point after they purchased the units, Debtors hired Blue Harbor Realty, Inc. ("Blue Harbor") as agent to manage, maintain, and rent the units. Debtors all defaulted on their payment obligations to Pathway under the mortgage notes at some point in the spring of 1987. On or after May 26, 1987, Pathway served Blue Harbor a notice of that default, directing Blue Harbor to thenceforth remit all rental collections to Pathway pursuant to the terms of the assignments of rents. On or before July 10, 1988, Pathway served a notice on Blue Harbor, as Debtors' agent, demanding a cure of the mortgage defaults. Debtors failed to cure the defaults; Pathway then commenced actions in the Florida state courts for judicial foreclosure of the mortgages. Shortly after that, Debtors filed for relief under Chapter 11. Prior to Debtors' bankruptcy filings, Pathway neither sought nor obtained the judicial appointment of a receiver, whether in the mortgage foreclosure actions or otherwise. It had not taken possession of the units, constructively or otherwise, by judicial process or otherwise; nor had it taken any action to collect rents directly from tenants.

Since their bankruptcy filings, Debtors have remained in possession of the units. They have continued to collect rents from them, and to pay ordinary post-petition expenses of management as incurred.[2] They have retained all net rental collections above current expenses in their debtor-in-possession accounts, pending the outcome of the present motion. The total of funds now on deposit for all three cases exceeds $300,000.00.

## CONCLUSIONS OF LAW

In these motions, Pathway asserts that it has an absolute and unconditional interest in the post-petition rents[3] generated by

---

2. Blue Harbor no longer acts as manager for Debtors; Debtors apparently terminated its authority around the time of their bankruptcy filings.

3. The parties also dispute the entitlement to certain pre-petition accrued rents which are presently held by Blue Harbor. The entitlement to these funds is not directly at issue in the present motions, and is the subject of three

Debtors from the condominium units subject to Pathway's mortgages.[4] The following language of 11 U.S.C. § 552(b) preserves any perfected and enforceable prepetition security interest which Pathway held in ongoing income generated from the units under the assignments of rents, and makes that interest enforceable against rental income generated post-petition:

> Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to ... rents ... of such property, then such security interest extends to such ... rents ... acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law ...

The assignments of rents executed by each debtor in favor of Capital and its assignees (and the underlying mortgage instruments, at least in the case of Camelot) purport to grant Capital and its assignees a security interest[5] in the rents generated from the mortgaged condominium units.[6] However, unperfected liens or security interests are subject to avoidance by a trustee or Chapter 11 debtor in possession under 11 U.S.C. § 544(a). Thus, the ultimate question is whether Pathway held a valid, perfected, and enforceable security interest in the rents as of the commencement of these cases. *In re Metro Square*, 93 B.R. 990, 995 (Bankr.D.Minn.1988). If it did, the post-petition rents are cash collateral, 11 U.S.C. § 363(a), and Debtors may not use them absent Pathway's consent, 11 U.S.C.

§ 363(c)(2)(A), or absent a court order granting adequate protection to Pathway, 11 U.S.C. §§ 363(b)(2)(B) and 363(e). *Id.* The validity and perfection of Pathway's security interest in rents is governed by state law. *Butner v. United States*, 440 U.S. 48, 57, 99 S.Ct. 914, 919, 59 L.Ed.2d 136 (1979); *Saline State Bank v. Mahloch*, 834 F.2d 690, 692 (8th Cir.1987); *In re Metro Square*, 93 B.R. at 995. In this case, Florida state law provides the rule of decision.

Historically, under Florida law, a mortgagee holding an assignment of rents from its mortgagor

> becomes entitled to receive rents ... from the time he takes possession of the property either by consent of the owner or through the appointment of a Receiver in foreclosure proceedings ... Only through a Receiver to collect future rents could the lien on rents be made effective.

*In re Executive Square, Ltd.*, 77 B.R. 303, 304 (Bankr.S.D.Fla.1987) (quoting, in part, *White v. Anthony Investment Co.*, 119 Fla. 108, 109, 160 So. 881, 882 (1935)). *See also In re Parham*, 72 B.R. 604, 605–06 (Bankr.M.D.Fla.1987); *In re Hamlin's Landing Joint Venture*, 77 B.R. 916, 919–20 (Bankr.M.D.Fla.1987); *Carolina Portland Cement Co. v. Baumgartner*, 99 Fla. 987, 128 So. 241, 245 (1930); *Bay Realty Corp. v. Becker*, 157 So.2d 91, 92 at n. 1 (Fla.App.1963); *Bornstein v. Somerson*, 341 So.2d 1043, 1048–49 (Fla.App.1977). *Compare, In re Village Properties, Inc.*, 723 F.2d 441, 443 (5th Cir.1984) (applying Texas law to same effect, and noting that this is the common-law rule). The Bankruptcy Courts in Florida have applied this rule to conclude that an assignee under an assignment of rents had no enforceable

---

pending adversary proceedings brought by Debtors against Blue Harbor.

**4.** The validity and enforceability of Pathway's mortgages is one of the major issues in the District Court litigation. This Court expressly declines to address that issue, and for the purposes of this order has assumed that Pathway has presently-valid and enforceable mortgages against all of the units.

**5.** While the instruments purport to be an absolute assignment, they constitute a "security in-

terest" under bankruptcy law. Under 11 U.S.C. § 101(45), a "security interest" is a "lien created by an agreement"; under 11 U.S.C. § 101(33), in turn, a "lien" is a "charge against *or interest in* property to secure payment of a debt ..." (emphasis added).

**6.** The Court has assumed that for the purposes of these cases the collateral assignments have the same effect as assignment-of-rents language in the body of a mortgage.

interest in post-petition rents where it had failed to take possession or obtain the appointment of a receiver before the assignor filed for bankruptcy, *In re Executive Square, Ltd., supra*, and *In re Hamlin's Landing Joint Venture, supra;* and, conversely, to deny relief to a Chapter 7 Trustee claiming the entitlement to post-petition rentals where the assignee had protected itself by taking possession and/or obtaining the appointment of a receiver pre-petition, *In re Parham, supra*.

In 1987, the Florida state legislature amended the Florida mortgage foreclosure laws to add FLA.STAT. § 697.07. That statute provides:

A mortgage may provide for an assignment of rents. If such assignment is made, such assignment shall be absolute upon the mortgagor's default, becoming operative upon written demand made by the mortgagee. Upon application by the mortgagee, a court of competent jurisdiction may require the mortgagor to deposit such rents in the registry of the court pending adjudication of the mortgagee's right to the rents ...

To date, none of the Florida appellate courts have construed this statute in a reported decision.[7] The Bankruptcy Court for the Middle District of Florida, however, has applied the statute to conclude that a mortgagee has perfected and made its interest in post-petition rents enforceable against a Chapter 11 debtor by recording the appropriate instruments and making a written demand for compliance with the assignment before the mortgagor's bankruptcy filing. *In re Aloma Square, Inc.*, 85 B.R. 623, 625–26 (Bankr.M.D.Fla.1988). The *Aloma Square* court went on to conclude without discussion that the mortgagee's interest in the post-petition rents made them cash collateral within the meaning of 11 U.S.C. § 363. It entered an order prohibiting the debtor from making any use of rental collections, and requiring it to sequester them.

The *Aloma Square* court applied FLA. STAT. § 697.07 to an assignor-assignee re-

lationship created by mortgage and assignment-of-rents instruments executed several years before the October 1, 1987 effective date of that statute. The debtor questioned whether the new statute could be given such retrospective effect. After a brief discussion of the issue, the court concluded that "[a]bsent an appellate ruling which is binding upon this Court, § 697.07 will be given retroactive effect to all pending cases and an assignment of rent will become effective upon compliance with the statute." Pathway urges the adoption of this application of the statute, and essentially argues that the *Aloma Square* holding is binding upon this Court.

■ Had *Aloma Square* been decided by one of the Florida state appellate courts, this Court necessarily would be constrained as a matter of federalism to follow it. It was not. Thus, its holding is not binding on this Court. To be sure, a federal court should give appropriate weight to the decision of another federal court on a matter governed by the state law originating within the other federal court's District. Such a decision is at least persuasive authority, in the absence of any binding state-court precedent. The difficulty with according this deference to the *Aloma Square* holding is that the court there mischaracterized the nature of new FLA.STAT. § 697.07 as merely procedural, rather than substantive, when it applied general and Florida precepts of statutory application to reach its ultimate conclusion.

FLA.STAT. § 697.07 makes all Florida assignments of rents into absolute transfers of the ongoing income stream, enforceable after the mortgagor's default upon the mortgagee's subsequent written demand. It apparently does away with the prior common-law requirement of undersecured status and/or insolvency as a prerequisite to the appointment of a receiver and the resultant enforcement of an assignment of rents. It also affects previously-settled property rights, to the extent that it vests the assignee with the right to receive rents

---

7. In *Atco Construction & Development Corp. v. Beneficial Savings Bank*, 523 So.2d 747 (Fla.App. 1988), the Court declined to entertain a creditor's argument based on the statute, on the

ground that it was raised for the first time on appeal—and that, in any event, the trial court had entered its order before the effective date of the statute.

during the "swing" period between written demand and the appointment of a receiver; under the prior law, the assignor would have enjoyed those rights. It thus operates to change the substantive property rights of the parties to an assignment of rents, at least in the situation of an undersecured mortgagee who has no adequate recourse against other parties. As such, it is not merely a clarification of prior statutory or common law; nor does it merely establish or elaborate an enforcement procedure. This Court fundamentally disagrees with the *Aloma Square* Court's characterization of § 697.07 as "merely chang[ing] the procedural manner in which an assignment of rents becomes effective."

■ There is a generally-recognized presumption against retroactive application of legislative enactments. *Seddon v. Harpster*, 403 So.2d 409 (Fla.1981). In the absence of an explicit statement of legislative intent for retroactive application, a statutory enactment is to be given prospective effect only. *Young v. Altenhaus*, 472 So.2d 1152 (Fla.1985). This rule is particularly compelling where retroactive application would impair rights vested prior to the enactment, create new obligations for the parties in a pre-existing legal relationship, or impose new penalties on conduct which occurred before enactment. *State v. Lavazzoli*, 434 So.2d 321 (Fla.1983); *The Village of El Portal v. City of Miami Shores*, 362 So.2d 275 (Fla.1978); *Fleeman v. Case*, 342 So.2d 815 (Fla.1977); *Senfeld v. Bank of Nova Scotia Trust Co.*, 450 So.2d 1157 (Fla.App.1984). The law governing the subject matter of a contract that is in effect as of the execution of the contract is deemed to be a part of the contract itself. *Nat'l Mdse. Co., Inc. v. United Service Automobile Ass'n*, 400 So.2d 526 (Fla.App. 1981).

■ The language of FLA.STAT. § 697.07 contains no explicit language authorizing a retroactive application of the statute. The structure of the Florida law governing the enforcement of assignments of rents prior to October 1, 1987, gave Debtors certain vested rights and expectations in the ongoing income stream from their mortgaged properties, however qualified and/or limited in scope and duration those rights may have been in the event of their default under the mortgages. Applying the statute retroactively to the relationships in these cases—created under instruments executed three to four years before the effective date of the statute—would impermissibly impair these rights and expectations. To the extent that the *Aloma Square* court concluded otherwise, this Court respectfully disagrees. FLA.STAT. § 697.07 cannot be applied to these cases in a fashion which is defensible under the cited canons of statutory construction. *See In re Federal Shopping Way, Inc.*, 457 F.2d 176 (9th Cir.1972); *Investors Syndicate v. Smith*, 105 F.2d 611 (9th Cir.1939) (both declining to apply amendments to Oregon and Washington state statutes governing enforcement of assignments of rents, under similar facts).

■ The law governing the perfection and enforceability of Pathway's rights under the assignments of rent in these cases is, therefore, the law as it existed before the enactment of FLA.STAT. § 697.07. Because Pathway was not in actual possession of the condominium units subject to its mortgages when Debtors commenced these cases, and because it had not obtained the appointment of a receiver in the judicial foreclosure proceedings which it had commenced, it had not made its rights to rents fully-enforceable. Because it did not hold perfected and enforceable rights in the rents when it commenced these cases, 11 U.S.C. § 552(b) does not operate to give it a security interest in post-petition rents. *In re Winzenburg*, 61 B.R. 141, 143 (Bankr.N. D.Iowa 1986). This Court has never entered an order according Pathway relief in the form of a bankruptcy remedy which equates to perfection and enforcement under the Florida statute. *Cf. In re Mears*, 88 B.R. 419 (Bankr.S.D.Fla.1988). As a result, the rents are not "cash collateral." *In re Metro Square*, 93 B.R. at 1001. Thus, Debtors need not afford Pathway adequate protection for their use and/or retention of the net proceeds.

IT IS THEREFORE ORDERED AND DETERMINED:

1. That Pathway Financial's motions for adequate protection are denied in their entirety.

2. That the net proceeds of Debtors' collection of post-petition rents are property of Debtors' bankruptcy estates and are free and clear of any claimed lien or interest of Pathway Financial as assignee under its pre-petition mortgages or assignments of rents.

3. That, pursuant to 11 U.S.C. §§ 348 and 349(b), this order shall constitute a final adjudication of the issues presented to this Court, notwithstanding any future conversion or dismissal of this case.

4. That notwithstanding the foregoing, until April 12, 1989, Debtors shall retain all net rent proceeds currently held by them on deposit in their debtor-in-possession accounts or elsewhere, and shall not disburse any portion of them for any purpose other than that authorized by further order of this Court.