**NEW YORK LIFE INSURANCE COMPANY, Plaintiff,**

v.

**BREMER TOWERS, a Minnesota limited partnership, et al., Defendants.**

**No. 3–86 CIV 630.**

United States District Court, D. Minnesota, Third Division.

May 17, 1989.

Dorsey & Whitney by Kevin W. Rouse and Thomas O. Kelly, III, Minneapolis, Minn., for plaintiff.

Wagner, Johnston & Falconer by Larry B. Ricke and Kathryn Page, Minneapolis, Minn., for Kathryn Page, trustee of the Bremer Towers Bankruptcy Estate.

## ORDER

ALSOP, Chief Judge.

The above entitled matter came on before the court on April 28, 1989, on New York Life Insurance Company's ("New York Life") motion for appointment of receiver. That motion was opposed by Kathryn Page, trustee for the bankruptcy estate of Bremer Towers Limited Partnership ("Bremer Towers"). For the reasons set forth below, New York Life's motion will be granted.

## I. FACTS.

The facts relevant to the instant motion are straightforward. In October, 1979, Bremer Towers borrowed 1.72 million dollars from the First National Bank of Minneapolis. That loan was secured by a mortgage and assignment of rents and leases ("Assignment"). These documents were dated October 16, 1979, and filed in the Office of the County Recorder, Ramsey County, Minnesota, on October 19. In November, 1980, the mortgage and Assignment were assigned to New York Life. At

the time of this transaction, Bremer Towers assigned other leases to New York Life as additional security. An amended Assignment was recorded by New York Life on November 5, 1980. Bremer Towers fell behind on its obligations and New York Life commenced an action in this court on July 11, 1986. On July 15, 1986, New York Life filed a Notice of Motion and Motion for Appointment of Receiver. That motion was to be heard on July 29, 1986. Coincidentally, on July 29, Bremer Towers filed a Chapter 11 bankruptcy proceeding which stayed that motion. The automatic stay was lifted in favor of New York Life effective October 21, 1988. On March 6, 1989, the bankruptcy proceeding was converted to a Chapter 7 proceeding and Kathryn Page was appointed trustee of this Chapter 7 estate.

New York Life now seeks an appointment of receiver, pursuant to the terms of the Assignment and Minn.Stat. § 559.17(2). There is no argument between the parties but that the Assignment provides for the appointment of a receiver upon default by Bremer Towers. However, the trustee argues that in the circumstances of this case, New York Life is not entitled to the appointment of a receiver. Her position is that the Assignment was a collateral assignment given as security for payment of the mortgage. As such, it represents an inchoate security interest. For such an inchoate interest to become perfected, the trustee states that New York Life either would have had to obtain appointment of a receiver, or actually taken possession of the property. Since neither of these steps was accomplished prior to bankruptcy, New York Life's unperfected interest in the rents and profits is inferior to the bankruptcy trustee's interest, may be avoided by the trustee, and hence New York Life is not entitled to a receiver.

In response to the trustee's position, New York Life puts forth two arguments. First, it claims that its security interest in the rents is perfected because of the recording of the Assignment and the operation of Minn.Stat. § 559.17. As a fallback position, it claims that even if its interest in the rents was unperfected at the time of the bankruptcy filing, it is nonetheless entitled to an appointment of receiver now. It claims that with the bankruptcy stay lifted, it is entitled to any remedies existing for it under Minnesota law, one of which remedies is the appointment of a receiver per section 559.17. This court finds that New York Life's interest in the Assignment was perfected as of its date of recording in Ramsey County, therefore, the court need not address New York Life's fallback position.

## II.  ANALYSIS.

The arguments of both parties are well taken. It is evident that there is a fundamental difference in their beliefs as to when in fact a security interest such as this one becomes perfected. Such a difference is not surprising, since the positions of the parties closely track the two opinions which currently divide the district's bankruptcy court. Judge Dreher held in *In re Metro Square*, 93 B.R. 990 (Bankr.D.Minn.1988), that for such an interest to be perfected, the assignee had to "obtain a court to appoint a receiver ... or take over possession itself after first filing a notice of default with the appropriate office." *Id.* at 998. In *In re Pavilion Place Associates*, 89 B.R. 36 (Bankr.D.Minn.1988), Judge O'Brien held otherwise, stating that such a "security interest is perfected upon its recording in the appropriate real estate records of the County Recorder or Registrar of Titles for the county in which the real estate producing the rents is located." *Id.* at 39. At the risk of adding nothing to Judge O'Brien's opinion, this court will nonetheless set out its own analysis for reaching the same conclusion.

The starting point for this analysis is *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). According to *Butner*, a determination of the validity of an assignment of rents provision must be decided by reference to state law. *Id.* at 57, 99 S.Ct. at 919. As is often the case, various states have taken differing approaches to the issue. Some states hold that such an assignment becomes absolute upon default. *See In re Aloma Square*,

*Inc.,* 85 B.R. 623 (Bankr.M.D.Fla.1988). Some hold that such an interest becomes perfected when the secured party takes some affirmative action to enforce its assignment. *See In re Fluge,* 57 B.R. 451 (Bankr.D.N.D.1985). Finally, some states require the actual possession of the property or appointment of a receiver to render the assignment absolute. *See Matter of Gotta,* 47 B.R. 198 (Bankr.D.Wis.1985). Although these cases show the variety of approaches possible, what is determinative in this case is Minnesota's law on the issue.

Minnesota law regarding the validity and effect of assignments of real estate rents has evolved over the years. Traditionally, if an assignment was made separate from the mortgage, that assignment was seen as fully enforceable. *See Farmers Trust Co. v. Prudden,* 84 Minn. 126, 86 N.W. 887 (1901). However, if an assignment was made contemporaneously (collaterally) with a mortgage, that assignment would be enforced "for the limited purpose of paying taxes, insurance premiums and assessments." *Cross Companies v. Citizens Mortgage Inv. Trust,* 232 N.W.2d 114, 117 (1975). The rationale for not allowing creditors to use the rents as security for the underlying mortgage stems from Minnesota's view towards mortgages. Minnesota is a lien theory state. When given an interest in real property, all the mortgagee receives is a lien on the property, not an actual conveyance which would entitle it to possession. The rationale behind the collateral assignment rule was that if a creditor were allowed to obtain the rents and profits from a property without foreclosure, an assignment could be used as a means to subvert the lien theory principle of mortgages.

In recent years, the perspective on these assignments has changed. In 1969, the Minnesota legislature amended section 559.17 to recognize the validity of assignments of rent even without consideration separate from the underlying mortgage.[1] The Minnesota Supreme Court had an opportunity to interpret this 1969 language in *Cross Companies.* The court in that case relied on the fact that such an assignment of rents is still based on the real estate itself and is additional security for that real estate debt. The assignment was therefore still directly tied to the mortgage, and upon a mortgage foreclosure producing no deficiency, the assignment was terminated. 232 N.W.2d at 118.

Subsequent to the *Cross Companies* case, and possibly as a reaction to it, the Minnesota legislature again amended section 559.17. Subdivisions 1 and 2 of that section now read as follows:

1. A mortgage of real property is not to be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure, except as permitted in subdivision 2. The enforcement of an assignment of rents of the type described in subdivision 2 shall not be deemed prohibited by this subdivision, nor because a foreclosure sale under the mortgage has extinguished all or part of the mortgage debt.

2. A mortgagor may assign, as additional security for the debt secured by the mortgage, the rents and profits from the mortgaged real property, if the mortgage:

(1) Was executed, modified or amended subsequent to August 1, 1977; (2) Secured an original principal amount of $500,000 or more; and (3) Is not a lien upon property which was entirely homesteaded as agricultural property. The assignment may be enforced as follows: (a) If, by the terms of an assignment, a receiver is to be appointed upon the occurrence of some specified event, and a showing is made that the event has oc-

---

1. The 1969 statute, with the 1969 amendment underlined, read as follows:

The mortgage of real property is not to be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure. *Nothing contained herein shall be construed to prevent a mortgagor from assigning, as additional security for the debt secured by the mortgage, the rents and profits from the mortgaged real property, and such an assignment shall be valid whether contained in the mortgage itself or in a separate instrument.*

curred, the court shall, without regard to waste, adequacy of the security, or solvency of the mortgagor, appoint a receiver....

(b) If no provision is made for the appointment of a receiver in the assignment, the assignment shall be binding upon the assignor without regard to waste, adequacy of the security or solvency of the mortgagor, but only in the event of default in the terms and conditions of the mortgage....

Nothing contained herein shall prohibit the right to reinstate the mortgage debt granted pursuant to section 580.30, nor the right to redeem granted pursuant to sections 580.23 and 581.10, and any excess cash, as that term is used herein, collected by the receiver under clause (a), or any rents and profits taken by the holder of the assignment under clause (b), shall be credited to the amount required to be paid to effect a reinstatement or redemption.

The Minnesota Supreme Court has never specifically determined how this amendment changes the law of assignments, but it is to this determination the court now turns.

Besides spelling out the procedures by which a receiver may come into possession of the property the statute makes a substantive distinction between traditional lien theory mortgages and assignments of rent. The second sentence of the pre–1977 version of section 559.17 allowed for assignments of rent, but it did not in any way distinguish these assignments from traditional mortgages. These assignments presumably gave the creditor the same interest as a mortgagee. They both received an interest, but were not conveyed an interest in property which entitled them to possession prior to foreclosure. The 1977 amendment changed this. The new language of the statute, deleting the explanatory middle clause, reads as follows: "A mortgage of real property is not to be deemed a conveyance ... *except* as permitted in subdivision 2." (emphasis added) Subdivision 2 deals with the assignment of rents and profits from the mortgaged property, and

therefore creates an interest which is very different from a traditional mortgage. The second sentence of subdivision 1 states that the assignment is an interest which can with the appointment of a receiver, be possessory prior to foreclosure, and which can be enforced whether or not a foreclosure sale has extinguished the underlying mortgage debt. The creation of this "new" interest was a step of some significance. In order to avoid its use or abuse in all situations, the legislature limited the use of such assignments to large commercial properties, whose owners presumably possess the acumen to look out for themselves.

The amended section 559.17 puts the assignments of rents and profits in large commercial settings into an Uniform Commercial Code—Article IX type situation. An agreement between the parties creates the initial security interest in the property. The secured interest is then perfected by recording the assignment with the appropriate authority. The mere perfection of the interest, however, does not give the creditor immediate access to the property. If the debtor defaults on its obligations, though, the creditor can take action to enforce its security interest. The fact that a creditor did not enforce that perfected interest prior to bankruptcy does not invalidate the interest, it merely stays the enforcement of that interest pending the bankruptcy court's determination of the party's entitlement to it.

If this were not the result, the separateness and distinctiveness of these security interests would be purely illusory. If a creditor can perfect its interest only by actually appointing a receiver or taking possession after filing a notice of default, a debtor can too easily negate the creditor's interest. The possibility that debtors would do this is more than the mere speculation of the court. In *Pavilion Place*, after default, the creditor took steps to notify the debtor of foreclosure and publish public notice of that foreclosure. The debtor filed its petition in bankruptcy the next day. *In re Pavilion Place*, 89 B.R. at 37. Similarly, in this case New York Life noticed a motion to appoint a receiver. The

debtor filed its petition for bankruptcy the day of the scheduled motion, making it impossible for the creditor to obtain a receiver. If the legislature really intended these assignments to be additional security as the statute states, it could not have intended the enforcement of such an interest to be impossible.[2]

## III. CONCLUSION AND ORDER.

■ Given the above analysis, the court finds that upon recordation of the mortgage and assignment of rents, New York Life perfected its security interest in the rents of Bremer Towers. The automatic stay of bankruptcy having been lifted as to New York Life, it is therefore entitled to an appointment of a receiver pursuant to its contract and Minn.Stat. § 559.17.

Accordingly,

IT IS HEREBY ORDERED That:

1. Eberhardt Company, a Minnesota corporation ("Receiver"), shall be, and hereby.is, appointed Receiver of the subject Premises defined in paragraph 23 of the Amended Complaint. The Receiver shall remain in place until such further order of this court.

2. Bremer Towers, a Minnesota Limited Partnership, Claseman Management Services, Inc., a Minnesota corporation, Kathryn Page, as trustee of the estate of Bremer Tower Limited Partnership, debtor, Reliance Property Management, Inc., and Reliance Real Estate, Inc., are hereby ordered and directed to deliver to Receiver possession of the Premises, and all books, accounts, and records pertaining thereto, and shall assist in the orderly turnover of the business thereof for such time as the Receiver shall request.

3. The Receiver shall be, and hereby is, authorized to enter upon, secure, manage, operate, maintain, and protect the Premises.

4. The Receiver shall collect all rents and revenues pertaining to the Premises, and all sums collected shall be applied in the manner and order of priority described in paragraph 5 on page 4 of the Assignment of Leases and Rents (Exhibit C To the Amended Complaint).

5. The Receiver shall be compensated in such amounts and upon such terms as the court shall approve.

6. The Receiver shall post bond in the amount of One Hundred Fifty Thousand Dollars ($150,000) to secure performance of its obligations hereunder.

7. The Receiver shall, at intervals not less frequently than monthly, file reports with this Court indicating the present status of the Premises, its income and expenses. Copies of each such report shall be mailed, simultaneously with delivery to this court, to counsel for plaintiff New York Life and Kathryn Page, as trustee of the estate of Bremer Tower Limited Partnership, debtor.

8. The Receiver, or any party to this action, shall have leave to apply to this court at any time for further instructions and directions in connection with or modifications of the terms of this order.

9. To the extent plaintiff, New York Life, at its sole option and discretion, advances funds to the Receiver in order to pay or fund operations of the Premises, then all such funds advanced shall be deemed to be advances from plaintiff New York Life to the defendant Bremer Towers, a Minnesota Limited Partnership, made as authorized in Section 1.7 of the Mortgage (Exhibit B to the Amended Complaint), bearing interest at the rate provided in plaintiff's Mortgage Note as amended from the date of advance, and fully secured by the Loan Documents identified in the Amended Complaint, with full benefit of

---

**2.** This result could be reached on narrower grounds. Several states require only *some* affirmative action on the part of a creditor to perfect an assignment of rents after default. In *Pavilion Place* and in this case, the creditors did take some steps toward enforcing their interests, though neither procedure was completed. Although this result might be an acceptable mid-dle ground, the court finds no support for such a result in either the language of section 559.17 or in Minnesota case law. To graft this procedural requirement for perfection onto the statute limits it in a way not intended by the Minnesota legislature. This middle-of-the-road approach will, therefore, be rejected.

the priority of said Loan Documents, and shall be evidenced by Receiver's receipt in a form acceptable to the Receiver and plaintiff.