In re GREENHAVEN VILLAGE APARTMENTS OF BURNSVILLE PHASE II LIMITED PARTNERSHIP, Debtor.

CAPITAL REALTY INVESTOR TAX EXEMPT FUND LIMITED PARTNERSHIP, Plaintiff,

v.

GREENHAVEN VILLAGE APARTMENTS OF BURNSVILLE PHASE II LIMITED PARTNERSHIP, Defendant.

Bankruptcy No. 4–89–728.
Adv. No. 4–89–082.

United States Bankruptcy Court,
D. Minnesota.

June 7, 1989.

John C. Thomas, Oppenheimer, Wolff & Donnelly, Minneapolis, Minn., for plaintiff/petitioner.

Steven B. Nosek, Dunkley, Bennett & Christensen, Minneapolis, for defendant/respondent.

## MEMORANDUM ORDER

ROBERT J. KRESSEL, Chief Judge.

This proceeding came on for hearing on May 31, 1989, on cross-motions for summary judgment. John C. Thomas and Teresa J. Rasmussen appeared for the plaintiff. Steven B. Nosek appeared for the defendant. This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) and (M). Based on the memoranda and arguments of counsel, and the file in this proceeding, I make the following memorandum order.

## FACTUAL BACKGROUND

Greenhaven Village Apartments of Burnsville Phase II Limited Partnership is the debtor in possession in a chapter 11 case filed on February 17, 1989. On December 1, 1986, Greenhaven, the City of Burnsville, and Capital Realty Investor Tax Exempt Fund Limited Partnership entered into a loan agreement. Under the agreement, the City and CRITEF loaned Greenhaven $4,039,000.00 from the sale of multifamily housing mortgage revenue bonds. As security for the obligation, Greenhaven granted to the City and CRITEF a Combination Mortgage and Security Agreement and Fixture Financing Statement dated December 1, 1986, on real property located in Dakota County, Minnesota. The Mortgage and Security Agreement were filed with the Dakota County Recorder on January 14, 1987.

As additional security for repayment of the obligation, Greenhaven granted to the City and CRITEF an Assignment of Leases, Rents, and Revenues, also dated December 1, 1986. Under that assignment, Greenhaven assigned to the City and CRITEF:

(a) Any and all present or future leases, subleases, concessions, licenses, other use contracts or tenancies, whether written or oral, covering or affecting any or all of the Mortgaged Property or all or any part of any present or future improvements located on the Mortgaged Property, together with any and all extensions, modifications, and renewals thereof (all of which are hereinafter collectively referred to as the "Leases" and singularly referred to as the "Lease"); and

(b) All rents, revenues, income, profits, and other payments of every kind due and payable or to become due and payable by virtue of the Leases, or otherwise due and payable or to become due and payable as the result of any use, possession, or occupancy of any portion or portions of the Mortgaged Property or as the result of the use of or lease of any personal property in the Mortgaged

Property (collectively, the "Rents and Revenues", whether the Rents and Revenues accrue before or after foreclosure of the Mortgage or during the period of redemption thereof.

The Assignment of Rents, like the Mortgage and Security Agreement, was filed with the Dakota County Recorder on January 14, 1987. On December 1, 1986, the City of Burnsville assigned to CRITEF all its right, title, and interest in the Loan Agreement, the Mortgage and Security Agreement, and the Assignment of Rents.

On March 2, 1989, CRITEF commenced this adversary proceeding, requesting a determination that it has a valid, perfected security interest in the rents of the property and seeking to enjoin Greenhaven's use of the rents as cash collateral. In its answer, Greenhaven asserted that CRITEF had failed to perfect its interest in the rents before Greenhaven filed its petition. Hence, Greenhaven alleged the rents are not cash collateral and CRITEF's interest in the rents is subject to Greenhaven's avoidance powers under 11 U.S.C. § 544. Greenhaven also filed a counterclaim seeking to avoid CRITEF's interest in the rents under § 544.

On March 6, 1989, on motion of CRITEF and without objection, a temporary restraining order was entered preventing Greenhaven from using cash collateral except for ordinary and necessary expenses for the maintenance and preservation of the apartment complex. On April 12, 1989, CRITEF and Greenhaven filed in Greenhaven's bankruptcy case a cash collateral stipulation in which Greenhaven specifically reserved the right to challenge CRITEF's assignment of rents. That stipulation was approved on April 21, 1989.

On May 1, 1989, CRITEF filed its motion for summary judgment, asserting that its December 1, 1986, assignment of rents constitutes a valid enforceable lien on the rents and profits of the mortgaged property and is not avoidable by Greenhaven. On May 19, 1989, Greenhaven filed its motion for summary judgment, asserting that CRITEF's unperfected interest in the rents is avoidable by Greenhaven under § 544.

## THE CURRENT STATUS OF ASSIGNMENT OF RENTS IN MINNESOTA

The issue of when an assignment of rents is perfected has been the focus of much attention in this district, due to the opposing viewpoints expressed by Judges Dreher and O'Brien in their respective opinions in *Northwestern Nat'l Life Ins. Co. v. Metro Square (In re Metro Square)*, 93 B.R. 990 (Bkrtcy.D.Minn.1988) and *In re Pavilion Place Assoc.*, 89 B.R. 36 (Bkrtcy. D.Minn.1988). In *Metro Square*, Judge Dreher found that, absent some affirmative steps taken by the assignee of rents beyond the mere recording of the assignment prior to the bankruptcy filing, the most the assignee had was an inchoate right to the rents which was avoidable by the debtor in possession. In *Pavilion Place*, Judge O'Brien held that the assignee's security interest in rents was perfected upon recording with the appropriate county recorder or registrar of titles. Not surprisingly then, Greenhaven vigorously argues the soundness of the *Metro Square* decision, while CRITEF relies on *Pavilion Place*. CRITEF also submitted a supplemental memorandum in support of its summary judgment motion and attached to it Chief Judge Alsop's recent decision in *New York Life Ins. Co. v. Bremer Towers*, 714 F.Supp. 414 (D.Minn. 1989). In that decision, Judge Alsop, like Judge O'Brien, found that the assignee of rents perfected its security interest in the rents upon recordation of the mortgage and assignment of rents.[1]

## DISCUSSION

Summary judgment will be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When deciding a motion for summa-

---

1. Not to be left out, Judge Kishel addressed the assignment of rents issue under Florida law in

*In re Camelot Assoc. Ltd. Partnership, et al.,* 102 B.R. 161 (Bktcy.D.Minn. 1989).

ry judgment, the court must view the facts and all reasonable inferences drawn from the facts in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Foster v. Johns–Manville Sales Corp.*, 787 F.2d 390 (8th Cir.1986).

### I. Section 544(a)(1) and (a)(3)

Greenhaven asserts that CRITEF's assignment of rents is unperfected, and hence, is avoidable by Greenhaven under either § 544(a)(1) or (a)(3) of the Bankruptcy Code. Section 544(a) provides:

(a) The trustee [2] shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

.　　.　　.　　.　　.

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected,

that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Once the trustee or the debtor in possession has assumed the status of a hypothetical lien creditor under § 544(a)(1), the court must look to state law to determine the nature and extent of that hypothetical lien creditor's rights. *Robinson v. Howard Bank (In re Kors, Inc.)*, 819 F.2d 19, 22 (2d Cir.1987). Likewise, a trustee or debtor in possession may avoid a lien against property of the estate under § 544(a)(3) if, under state law, a hypothetical bona fide purchaser of the property from the debtor could have avoided the lien as of the date of bankruptcy. *In re Iowa–Missouri Realty Co.*, 86 B.R. 617, 619 (Bktcy.W.D.Mo.1988).

■ All three opinions from this district, as well as the written and oral arguments presented by the parties in this proceeding, focus on perfection of the assignment of rents as determinative of the avoidance issue. Greenhaven asserts that Minn.Stat. § 559.17, subd. 2 enunciates the procedures for perfection of an assignment of rents. Greenhaven argues that an assignment of rents is perfected only by obtaining a court-appointed receiver or by filing a notice of default with the county recorder. However, I think Minn.Stat. § 559.17, subd. 2 speaks only of *enforcement* of assignments of rent, not *perfection*.[3] Greenha-

---

2. Subject to certain limitations, a debtor in possession has all the rights and powers of a trustee. 11 U.S.C. § 1107(a).

3. Minn.Stat. § 559.17 provides:

Subdivision 1. A mortgage of real property is not to be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure, except as permitted in subdivision 2. The *enforcement* of an assignment of rents of the type *described in subdivision 2* shall not be deemed prohibited by this subdivision, nor because a foreclosure sale under the mortgage has extinguished all or part of the mortgage debt.

Subdivision 2. A mortgagor may assign, as additional security for the debt secured by the mortgage, the rents and profits from the mortgaged real property, if the mortgage:

(1) Was executed, modified or amended subsequent to August 1, 1977;

(2) Secured an original principal amount of $500,000 or more; and

(3) Is not a lien upon property which was entirely homesteaded as agricultural property. The assignment may be *enforced* as follows: (a) If, by the terms of an assignment, a receiver is to be appointed upon the occurrence of some specified event, and a showing is made that the event has occurred, the court shall, without regard to waste, adequacy of the security, or solvency of the mortgagor, appoint a receiver who shall, with respect to the excess cash remaining after application as provided in section 576.01, subdivision 2, apply it as prescribed by the assignment. If the assignment so provides, the receiver shall apply the excess cash in the manner set out herein from the date of appointment through the entire redemption period from any foreclosure sale. Subject to the terms of the assignment, the receiver shall have the powers

ven erroneously equates the two. Contrary to Greenhaven's argument, no Minnesota statute expressly prescribes the manner and means of perfecting an assignment of rents. In addition, perfection is neither mentioned nor required under § 544(a).[4] Therefore, I think the emphasis on perfection of assignments of rent for avoidance purposes is misplaced and makes the issue much more complicated than it is.

Instead, the real issue under § 544(a) is whether the debtor in possession, in its status as a judicial lien creditor or bona fide purchaser, acquires an interest in the rents as of the date of its chapter 11 filing which is superior under Minnesota law to that of CRITEF's prior recorded assignment of rents. In order to determine the appropriate Minnesota law to apply in determining the relative priority of the parties' interests in the assignment of rents, I

must first identify the character of the rents assigned.

Neither party was aware of any Minnesota statute which specifically characterizes an assignment of rents as either a real property interest,[5] a security device or some other type of interest.[6] However, Minnesota Statute § 336.9–104(j) expressly excepts rents from the application of Article 9:

[t]his article does not apply:

. . . . .

(j) except to the extent that provision is made for fixtures in section 336.9–313, *to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder* . . .

Minn.Stat. § 336.9–104(j) (emphasis added). The language of this statute unequivocally

---

and duties as set forth in section 576.01, subdivision 2.

(b) If no provision is made for the appointment of a receiver in the assignment, the assignment shall be binding upon the assignor without regard to waste, adequacy of the security or solvency of the mortgagor, but only in the event of default in the terms and conditions of the mortgage, and only in the event the assignment requires the holder thereof to first apply the rents and profits received as provided in section 576.01, subdivision 2, in which case the same shall operate against and be binding upon the occupiers of the premises from the date of filing by the holder of the assignment in the office of the county recorder or the office of the registrar of titles for the county in which the property is located of a notice of default in the terms and conditions of the mortgage and service of a copy of the notice upon the occupiers of the premises. The holder of the assignment shall apply the rents and profits received in accordance with the terms of the assignment, and, if the assignment so provides, for the entire redemption period from any foreclosure sale. A holder of an assignment who enforces it in accordance with this clause shall not be deemed to be a mortgagee in possession with attendant liability.

Nothing contained herein shall prohibit the right to reinstate the mortgage debt granted pursuant to section 580.30, nor the right to redeem granted pursuant to sections 580.23 and 581.10, any excess cash, as that term is used herein, collected by the receiver under clause (a), or any rents and profits taken by the holder of the assignment under clause (b), shall be credited to the amount required to be paid to effect a reinstatement or redemption.

Minn.Stat. § 559.17 (emphasis added).

4. However, I recognize that § 544 actions typically turn on whether a creditor's interest is perfected. *See, e.g.,* Minn.Stat. § 336.9–301:

(1) Except as otherwise provided . . ., an unperfected security interest is subordinate to the rights of

. . . . .

(b) a person who becomes a lien creditor without knowledge of the security interest and before it is perfected . . .

5. CRITEF's counsel seemed to think that the characterization of an assignment of rents as a real estate interest was a well established fact. At oral argument Thomas stated: "People have been calling an elephant an elephant for a thousand years. I'm not going to dispute that that's what it is . . ."

6. A Minnesota Supreme Court case from 1901 rather ambiguously held that the assignment of rents in that case was not an interest in real estate. *Farmers Trust Co. v. Prudden,* 84 Minn. 126, 86 N.W. 887 (1901). However, the court's reasoning appears to be based on the fact that the assignment was executed after the mortgage, was supported by separate consideration, and was not given as security for the mortgage debt. *See State Mutual Life Assurance Co. v. Frantz Klodt & Son, Inc.,* 306 Minn. 249, 237 N.W.2d 354, 356 (1975). Here, both the mortgage and assignment of rents were executed on December 1, 1986, and both were recorded on January 14, 1987. The assignment was given as additional security for the mortgage debt. Therefore, to the extent *Prudden* is still good law, it is distinguishable from the facts before me and I decline to follow its holding.

establishes that Greenhaven's assignment to CRITEF of all "rents, revenues, income, profits, and other payments ... due and payable by virtue of the Leases ..." is an interest in real estate. Therefore, I will apply Minnesota real property law in determining the rights of the parties in and to the rents.

The Minnesota recording statute, Minnesota Statute § 507.34, outlines the priorities between holders of unrecorded interests in real estate and certain other subsequently acquired interests in that same real estate. It provides:

> [e]very conveyance [7] of real estate shall be recorded in the office of the county recorder of the county where such real estate is situated; and *every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration* of the same real estate, or any part thereof, whose conveyance is first duly recorded, as against any attachment levied thereon *or any judgment lawfully obtained* at the suit of any party against the person in whose name the title to such land appears of record prior to the recording of such conveyance.

Minn.Stat. § 507.34 (emphasis added). This section establishes, at least by negative implication, that the holder of a recorded interest in real estate, such as an assignment of rents, takes ahead of any rights in that real estate acquired by a subsequent good faith purchaser or a judgment lien creditor. A "subsequent purchaser in good faith and for a valuable consideration" has been interpreted as the equivalent of a bona fide purchaser who gives consideration in good faith without actual, implied or constructive notice of inconsistent outstanding rights of others. *Joanis v. Wayzata Bank & Trust Co. (In re Inv. Sales Diversified, Inc.)*, 49 B.R. 837 (Bktcy.D. Minn.1985), *citing Anderson v. Graham Inv. Co.*, 263 N.W.2d 382, 384 (Minn.1978). Therefore, the hypothetical identities assumed by Greenhaven under Bankruptcy Code § 544—namely, judicial lien creditor

and bona fide purchaser—are the same as those described in Minnesota Statute § 507.34.

Under Minnesota Statute § 507.34, CRITEF's assignment of rents is superior to any rights in the rents acquired by Greenhaven in its status as a bona fide purchaser or judicial lien creditor as of the commencement of its chapter 11 case. CRITEF recorded its assignment of rents with the Dakota County Recorder in compliance with § 507.34. That assignment was recorded on January 14, 1987, over two years before Greenhaven's chapter 11 petition was filed and its rights as a lien creditor or bona fide purchaser under § 544(a)(1) and (a)(3) arose. Accordingly, CRITEF's assignment of rents is not avoidable by Greenhaven under either § 544(a)(1) or (a)(3).

## II. Cash Collateral

The Bankruptcy Code § 363 defines cash collateral as:

> cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, *rents,* or *profits* of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a) (emphasis added). Section 552(b) provides:

> Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, *rents,* or *profits* of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the

---

7. Conveyance "includes every instrument in writing whereby any interest in real estate is

created, aliened, mortgaged, or assigned ..." Minn.Stat. § 507.01.

case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b) (emphasis added). Under these two sections, rents and profits such as those assigned to CRITEF by Greenhaven are cash collateral under § 363(b) until actually avoided by the trustee or debtor in possession through an adversary proceeding commenced for that purpose. *See* Bankruptcy Rule 7001(2); *Saline State Bank v. Mahlock*, 834 F.2d 690 (8th Cir.1987) (even if an unsecured creditor had standing to initiate an adversary proceeding to avoid a mortgagee's lien, it failed to do so, and hence, the avoidance power was never invoked and the lien was not avoided). Having determined that CRITEF's recorded assignment of rents is not avoidable by Greenhaven, those rents continue to be cash collateral which Greenhaven may not use, absent CRITEF's consent or my authorization.

## CONCLUSION

Under Minnesota law, recording is the critical event which determines the priority of the competing interests of the assignee of rents and the debtor in possession in the context of an action to avoid an assignment of rents. The fact that CRITEF did not enforce its assignment of rents under § 559.17, subd. 2, before Greenhaven's case was filed does not change this result. As CRITEF correctly points out, the granting, recording, and enforcing of an assignment of rents are separate and distinct concepts under Minnesota law. A mortgagor may grant an assignment of rents as additional security for the mortgage debt. Minn.Stat. § 559.17, subd. 2. A mortgagee's recording of that assignment pursuant to Minnesota Statute § 507.34 establishes its priority over subsequently acquired interests of good faith purchasers or lien creditors. Upon the mortgagor's default, the mort-

gagee may enforce the assignment by obtaining a court-appointed receiver or by filing a notice of default with the appropriate county recorder. Minn.Stat. § 559.17, subd. 2(3)(a) and (b). When perfection occurs along this continuum is irrelevant to a determination of the respective rights of the parties in and to the rents from the Dakota County property.[8] Section 507.34 establishes that these respective rights turn on whether the assignment was recorded. The parties to this proceeding do not dispute that CRITEF's assignment of rents was recorded over two years before the commencement of Greenhaven's chapter 11 case. Hence, Greenhaven may not avoid CRITEF's assignment of rents. As the rents are cash collateral under Bankruptcy Code §§ 363(a) and 552(b), Greenhaven may not use them without CRITEF's consent or court approval.

There are no issues of material fact as to the validity and enforceability of CRITEF's assignment of rents, and hence, CRITEF is entitled to judgment as a matter of law.

THEREFORE, IT IS ORDERED:

1. The plaintiff's motion for summary judgment is granted;

2. The defendant's motion for summary judgment is denied;

3. The plaintiff has a valid interest in the leases, rents, revenue, income profits, and other payments from the Dakota County property which is superior to and may not be avoided by the defendant in its status as a bona fide purchaser or judicial lien creditor;

4. The defendant is enjoined from using cash collateral in the form of rents without first obtaining the plaintiff's consent or court approval;[9] and

5. The defendant shall segregate and account for the post-petition rents derived through operation of the Dakota County property.

---

8. *See* Chief Judge Alsop's opinion in *Bremer Towers supra* for persuasive analysis that Minn. Stat. § 559.17 is an "enforcement" statute not a "perfection" statute.

9. The cash collateral stipulation and order now in effect constitute such consent and approval.

LET JUDGMENT BE ENTERED AC-CORDINGLY.