In re METRO SQUARE, a Minnesota Partnership, Debtor.

NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, Appellant,

v.

METRO SQUARE, a Minnesota Partnership, Appellee.

Civ. 4–89–149.
Bankruptcy No. 4–88–2117.

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 11, 1989.

Oppenheimer Wolff & Donnelly, Patrick McLaughlin and Michael B. Fisco, Minneapolis, Minn., for appellant.

Fabyanske, Svoboda, Westra & Davis, P.A., Christopher A. Elliott, St. Paul, Minn., for appellee.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

This matter is before the court on an appeal of a December 13, 1988 order by the bankruptcy court.[1] Appellant Northwestern National Life Insurance Company (NWNL) commenced an adversary action in the bankruptcy court against the debtor, Metro Square, appellee here. NWNL appeals the bankruptcy court's determination that NWNL did not have a perfected security interest in rent proceeds from real property before the bankruptcy petition was filed. Jurisdiction is asserted pursuant to 28 U.S.C. § 158 and § 1334.

### I.

The background of this commercial bankruptcy is set forth by the bankruptcy court. The underlying facts are undisputed and can be outlined as follows. Metro Square is a partnership established in 1983 to acquire and operate the Metro Square office and commercial building in downtown St. Paul. The building is the sole asset of the partnership. The building purchase was financed by NWNL which provided the principal sum of $11 million in exchange for a promissory note. As security for the note NWNL received a mortgage and security agreement on the building, and also a document which purported to be an absolute assignment of rents. The effect of the assignment of rents is the focus of this dispute.

All of the security documents were signed on September 23, 1983, and filed in the appropriate recorder offices shortly thereafter. The assignment of rents states that it assigns all interests in the rents as of the date of the agreement.[2] It also contains a simultaneous license back to the partnership of the rights to receive rents so long as the promissory note is not in default. The bankruptcy court determined that because of this license back arrangement the assignment was not absolute. The parties do not dispute this conclusion.

By early 1988 Metro Square was facing growing financial difficulties and was apparently in technical default on the promissory note. By may 1, 1988, it had failed to make a payment of principal and interest on the note. It also failed to pay property taxes due on May 15, 1988. Metro Square filed its chapter 11 petition on May 25, 1988. As of the date the petition was filed, NWNL had not taken any action to enforce its rights under the security instruments— it had not petitioned for appointment of a receiver, had not rescinded its license allowing Metro Square to collect rents, nor had it commenced foreclosure proceedings.

NWNL brought an adversary action in the bankruptcy court seeking a declaration that post-petition rents were cash collateral under 11 U.S.C. § 363 and an injunction prohibiting the bankruptcy estate from using the rent income. NWNL also sought an accounting. Metro Square opposed the action and filed a counterclaim seeking a declaration that the debtor in possession was entitled to control the rent proceeds.

NWNL brought a summary judgment motion before the bankruptcy court on its entire claim. The bankruptcy court determined that no material facts were in dispute. It denied NWNL's motion, however, and instead ordered summary judgment for Metro Square on its counterclaim, declaring that the estate's interest in rents was superior to the interests of NWNL. 93 B.R. at 1001. This conclusion led to the

---

1. The Honorable Nancy C. Dreher, United States Bankruptcy Judge. *In re: Metro Square,* 93 B.R. 990 (Bankr.D.Minn.1988).

2. The term "rents" is defined broadly to include rents, profits, income, and almost any form of or receipts which might arise from use of the property.

instant appeal. Appellant challenges the conclusion that under Minnesota law the holder of an assignment of rents must take some pre-petition action beyond filing the instrument in order to maintain its priority over the bankruptcy estate.

## II.

On this appeal any findings of fact made by the bankruptcy court are reviewed under the clearly erroneous standard, while conclusions of law are considered de novo. *Lend Lease v. Briggs Transportation Co.*, 780 F.2d 1339, 1342 (8th Cir.1985). The parties do not dispute any findings of fact made by the bankruptcy court. This appeal challenges only the court's legal conclusions regarding the priority of competing interests in the rents.

Property acquired by a bankruptcy estate after the bankruptcy petition has been filed is generally not subject to pre-petition liens. 11 U.S.C. § 552(a). An exception is made for certain pre-petition security interests, however, including some rights to future rents. 11 U.S.C. § 552(b).[3]

NWNL contends that the rent proceeds in dispute here fall within the exception of § 552(b) and are therefore "cash collateral" within the definition of 11 U.S.C. § 363.[4]

As such, they may not be used by the bankruptcy estate unless NWNL's interests are preserved. Appellee responds that NWNL's interests are protected only to the extent that the interests are recognized under Minnesota law. It argues that under Minnesota law the rent proceeds are not entitled to be considered cash collateral.

The bankruptcy court determined that NWNL's interest in rent proceeds was subordinate to the interest assumed by the bankruptcy estate.[5] It ruled that NWNL's interest in post-petition rents was not cash collateral under § 363 because its security interest was not perfected before the bankruptcy petition was filed. 93 B.R. at 1001. Appellant challenges the conclusion that the assignment of rents was an unperfected even after the document was properly filed with the appropriate recording office.

Minnesota law governs the priority of interests such as those disputed here. *See Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1976) (bankruptcy code adopts state law regarding priority of security interests); *Saline State Bank v. Mahloch*, 834 F.2d 690, 692 (8th Cir.1987). The statute relied on by the bankruptcy is Minn.Stat. § 559.17.[6] The

---

**3.** Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, *rents, or profits of such property*, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case *to the extent provided by such security agreement and by applicable non-bankruptcy law,* except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b) (emphasis added).

**4.** In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, *rents, or profits of property subject to a security interest* as provided in section 552(b) of this title, whether existing

before or after the commencement of a case under this title.

11 U.S.C. § 363(a) (emphasis added).

**5.** A bankruptcy estate assumes the role of a hypothetical lien creditor and is afforded an interest in estate property commensurate with that status under state law. Under the "strong arm" provisions of § 544 the estate may then avoid subordinate interests. *See In re Greenhaven Village Apartments of Burnsville,* 100 B.R. 465, 468 (Bankr.D.Minn.1989).

**6.** Subd. 1. [T]he enforcement of an assignment of rents of the type described in subdivision 2 shall not be deemed prohibited by this subdivision, nor because a foreclosure sale under the mortgage has extinguished all or part of the mortgage debt.

Subd. 2. A mortgagor may assign, as additional security for the debt secured by the mortgage, the rents and profits from the mortgaged real property, if the mortgage:

(1) Was executed, modified or amended subsequent to August 1, 1977;

(2) Secured an original principal amount of $500,000 or more; and

bankruptcy court determined that the statute required an assignee of rents to take some affirmative post-default action in order to perfect its security interest:

> [I]t is clear from [the language in the statute] that a mortgagee may now obtain possession of the rents without commencing foreclosure proceedings. To obtain such possession or *"enforce"* its assignment, it has to do one of two things: either, obtain a court to appoint a receiver (if the assignment, by its terms, requires the appointment of a receiver), or take over possession itself after first filing a notice of default with the appropriate office. *See* Minn.Stat. § 559.17, subd. 2. Neither move may be taken until an event of default has occurred.

93 B.R. at 988 (emphasis in original). The court ruled that NWNL had not taken the requisite action after default to perfect its security interest before the bankruptcy petition was filed. *Id.*

Appellant contends that this construction of the statute is erroneous. It argues that the court failed to distinguish between perfecting an interest and obtaining a possessory interest. It asserts that Minn.Stat. § 559.17 does not govern perfection of security interest, but merely sets forth the way in which a lienholder may obtain a possessory interest. Appellant claims that perfection of an interest in rent proceeds is accomplished just as with a mortgage—by complying with the recording statute, Minn.Stat. § 507.34. It contends that its lien on rent proceeds was therefore perfected well before the bankruptcy petition—that is, when it was filed with the county recorder.

The statute relied on by the bankruptcy court, § 559.17, speaks of enforcement of a lien, not perfection. It does not expressly require that a lienholder take possession or seek to have a receiver appointed before perfecting its security interest. It was erroneous to equate perfection of the security interest with enforcement of the right to possession.[7]

This same issue has been addressed by other courts which have ruled contrary to the decision on appeal. In *New York Life Ins. Co. v. Bremer Towers,* 714 F.Supp. 414 (D.Minn.1989) (Alsop, C.J.) the court ruled that under Minnesota law a security interest in an assignment of rents is perfected by properly recording the assignment. *Id.* 714 F.Supp. at 418. "The fact that a creditor did not enforce that perfected interest prior to bankruptcy does not invalidate the interest, it merely stays enforcement ... pending the bankruptcy court's determination of the party's entitlement to it." *Id.; accord, In re Pavilion Place Associates,* 89 B.R. 36, 39 (Bankr.D.Minn.1988) (O'Brien, J.) (security interest perfected upon proper filing of the instrument); *In re Greenhaven Village Apartments of*

---

(3) Is not a lien upon property which was entirely homestead as agricultural property. The assignment may be enforced as follows:

(a) If, by the terms of an assignment, a receiver is to be appointed upon the occurrence of some specified event, and a showing is made that the event has occurred, the court shall, without regard to waste, adequacy of the security, or solvency of the mortgagor, appoint a receiver who shall, with respect to the excess cash remaining after application as provided in section 576.01, subdivision 2, apply it as prescribed by the assignment....

(b) If no provision is made for the appointment of a receiver in the assignment, the assignment shall be binding upon the assignor without regard to waste, adequacy of the security or solvency of the mortgagor, but only in the event of default in the terms and conditions of the mortgage, and only in the event the assignment requires the holder thereof to first apply the rents and profits received as provided in section 576.01, subdivision 2, in which case the same shall operate against and be binding upon the occupiers of the premises from the date of filing by the holder of the assignment in the office of the county recorder or the office of the registrar of titles for the county in which the property is located of a notice of default in the terms and conditions of the mortgage and service of a copy of the notice upon the occupiers of the premises. The holder of the assignment shall apply the rents and profits received in accordance with the terms of the assignment, and, if the assignment so provides, for the entire redemption period from any foreclosure sale.... Minn.Stat. § 559.17 (1977).

7. Appellee argues that if the bankruptcy court erred in avoiding NWNL's interest, the estate should still be permitted to use rent proceeds under the equities of the case doctrine. 11 U.S.C. § 552(b). The bankruptcy court made no findings in this regard, however.

*Burnsville*, 100 B.R. 465 (Bankr.D.Minn. 1988) (Kressel, C.J.) (distinguishes perfection and enforcement of security interest; perfection of interest in assignment of rents is accomplished by complying with the recording statute). This court also concludes that properly filed assignments of rents are perfected interests in real estate and subject to the priorities established by the recording statute, Minn.Stat. § 507.34. *See id.* at 470. Under the recording statute, NWNL's interest in rent proceeds is superior to that of the debtor in possession and therefore not avoidable under 11 U.S.C. § 544.

This conclusion is based upon interpretation of the Minnesota statutes and is in accordance with legislative intent and modern commercial lending practices. *See In re Pavilion Place Associates*, 89 B.R. at 39: "The amendments to § 559.17 [have] taken the law of assignment of real estate rents out of the dark ages and tooled it for application to modern commercial transactions." *Id.* The determination that assignments of rent are perfected upon filing will discourage precipative litigation and will likely result in more cooperative financial work-outs between lenders and troubled borrowers. Parties to such assignments will not have the same incentive to engage in a race to the courthouse upon the first hint of default. This interpretation also furthers the purpose of the 1977 amendments to § 559.71 which intended to make assignments of rents a practical means of securing financing. *See New York Life Insurance Co. v. Bremer Towers*, 714 F.Supp. at 418–419.

The bankruptcy court therefore erred in concluding that NWNL's assignment of rents was unperfected before the bankruptcy petition was filed. NWNL has a nonavoidable interest in post-petition rent proceeds, and those proceeds are cash collateral under 11 U.S.C. § 363. Because of this determination there is no need to address whether NWNL perfected its interest after the petition was filed or the adequacy of appellee's efforts to avoid NWNL's interest.

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that the order of the bankruptcy court dated December 13, 1988 is reversed. This matter is remanded to the bankruptcy court for further proceedings consistent with this opinion.